# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICTOR BONDARUK** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-5979** |
| v. | : | |
| | : | |
| **PNC BANK** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                            SEPTEMBER 9, 2022

## MEMORANDUM OPINION

**INTRODUCTION**

Victor Bondaruk ("Plaintiff") filed an employment discrimination complaint against his former employer, PNC Bank ("Defendant" or "PNC"), asserting claims of unlawful discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* [ECF 2]. Specifically, Plaintiff alleges that PNC unlawfully terminated his employment based on his Russian/Ukrainian national origin.

Presently, before this Court are PNC's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 45], Plaintiff's responses, [ECF 49, 50], and PNC's replies, [ECF 53, 54]. The issues presented in the motion are fully briefed, and, therefore, this matter is ripe for disposition. For the reasons set forth herein, PNC's motion for summary judgment is granted, and judgment is entered in favor of PNC on all of Plaintiff's claims.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant—here, Plaintiff. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motion are summarized as follows:[1]

Plaintiff's national origin is Russian and Ukrainian. PNC employed Plaintiff as a Branch Sales and Service Associate II at its Welsh Road Branch in Philadelphia, Pennsylvania, from August 2016 until his discharge on October 17, 2019. Plaintiff was hired by Office Manager Vanessa Hall, who knew of Plaintiff's national origin at the time of his hire. Plaintiff was the only person of Russian or Ukrainian national origin at this branch.

At the time of his hiring, Plaintiff agreed to read and comply with PNC's Code of Business Conduct and related ethics policies. Plaintiff also received training on PNC's Code of Ethics. As a Branch Sales and Service Associate II, Plaintiff was eligible to participate in PNC's Sales Incentive Program and to earn incentive pay for qualified referrals.

PNC's Customer Referral Requirements provide a checklist to help employees determine if a potential referral opportunity is valid and should be entered into Genesis, PNC's computer system for tracking referrals. Referrals must be "properly entered no later than the same calendar day (and within reasonable business hours) in which the application was started." The Customer Referral Requirements also provide that "[s]ubmitting an invalid referral for the purpose of meeting performance goals and/or obtaining sales credit for incentive may be considered a dishonest act in violation of P.N.C.'s Code of Business Conduct and Ethics and P.N.C.'s Fidelity Bonding Policy and may result in immediate termination of employment."

In March 2018, Vaughn Vaughnson became Plaintiff's branch manager. Raymond DiSandro was the Regional Manager for Plaintiff's region.

*<u>Mistreatment of Plaintiff in His Workplace</u>*

At unspecified times during his employment, Plaintiff alleges that he was the subject of ridicule and disrespectful treatment by a number of his coworkers, including, in particular, Mr. Vaughnson. These coworkers occasionally mocked Plaintiff's accent, refused to assist Russian clients, directed clients to coworkers other than him, took Plaintiff's clients, excluded him from a work event, and interfered with his work. They also made disparaging comments, including the following:

- Jamar McQueen (a coworker) told Plaintiff he was a "f**ing idiot and dumb and to go home;"

---

[1] These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any facts are disputed, such disputes will be noted and, if material, construed in Plaintiff's favor pursuant to Rule 56.

- When asked why she failed to refer a client to Plaintiff, Latasha Pollard (a coworker) told Plaintiff, "I hate you."
- Mr. Vaughnson called Plaintiff a "Russian clown" and stated that he was "tired of Russians."
- After asking Plaintiff where he got money for a new car, Mr. Vaughnson referred to Plaintiff as a "millionaire."

### *Plaintiff's Complaints*

Plaintiff made a number of complaints—some orally, some in writing—about the treatment he received at work, including the following:

- Made two complaints about Latasha Pollard, who refused to provide a particular service to one of Plaintiff's Russian clients;
- Complained to Mr. Vaughnson about Mr. Vaughnson taking Plaintiff's clients; and
- Complained to Mr. DiSandro about Mr. Vaughnson taking someone less experienced than Plaintiff to a university event; disrespecting him; taking his client; referring clients to other coworkers instead of Plaintiff; acting unethically; refusing to give Plaintiff a requested day off for a doctor's appointment; removing the chairs at his desk so that he could not work; unplugging his computer and telling Plaintiff to go home; trying to deprive Plaintiff of bonuses; and interfering with Plaintiff's provision of services to his clients.

Plaintiff also lodged the following complaints about Mr. Vaughnson with PNC's Employee Relations (called "ERIC"):

- November 28, 2018—Plaintiff complained about Mr. Vaughnson taking a client to another branch to secure an auto loan;
- September 23, 2019—Plaintiff complained about Mr. Vaughnson interfering with his work and sending him home; and
- October 2, 2019—Plaintiff complained about Mr. Vaughnson interfering with his work and Mr. Vaughnson's dishonesty.

Notably, none of Plaintiff's written or oral complaints referred to any type of discrimination, including national origin discrimination. Indeed, Plaintiff testified that none of his complaints was about national origin discrimination:

> Q. So is it fair to say that you never complained to anyone at PNC that Vaughn Vaughnson's treatment of you, or anyone's treatment of you, was because of your national origin being Russian and Ukrainian?
>
> A. I never specifically complained that I was discriminated because I'm Russian, never in those terms that you just said.

Q.	Or because you're Ukrainian, correct?

A.	Yes.

*<u>Termination of Plaintiff's Employment</u>*

On May 17, 2019, Shannon Schweda, PNC's Senior Employee Relations Investigator, provided Plaintiff a Final Written Warning, informing Plaintiff that he had violated PNC's policies by admittedly taking part of an online test on behalf of a customer that was intended for customers seeking qualification for a particular type of account. Plaintiff was advised that "[a]ny further serious procedure violations may result in immediate termination of your employment with PNC." Plaintiff acknowledged receiving this written warning but disagreed with its "wording."

On October 8, 2019, Plaintiff emailed Mr. DiSandro to report that he believed Mr. Vaughnson was stealing a client from him. According to Plaintiff, as reported in his own email, after observing Mr. Vaughnson meet with the client, Plaintiff opened the client's profile to make sure his previous referral from June was still active. When Plaintiff saw that his June referral had "f[allen] off the system," he entered another referral.

Mr. DiSandro forwarded Plaintiff's email to Ms. Schweda and suggested that Plaintiff's conduct violated PNC's "code of ethics." Ms. Schweda initiated an investigation into Plaintiff's conduct. As part of the investigation, Ms. Schweda spoke with Plaintiff on October 11, 2019. Plaintiff told Ms. Schweda that when the client came to the branch to meet with Mr. Vaughnson, Plaintiff looked at the shared notes in the system, noticed that his previous referral for this client was no longer in the system, and entered a new referral.

Ms. Schweda concluded that Plaintiff's actions violated PNC's Customer Referral Requirements, which prohibited employees from placing a second referral when a previous referral expires, and PNC's code of ethics, which prohibited dishonest acts, including the manipulation of sales records. Thereafter, Ms. Schweda recommended that Plaintiff's employment be terminated. Plaintiff's employment was terminated on October 17, 2019.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A

fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

In his complaint, Plaintiff avers that PNC violated Title VII when it unlawfully terminated him purportedly for violating the bank's "same-day referral rule." Specifically, Plaintiff contends that his termination was based unlawfully on his national origin and in retaliation for his complaints about the discriminatory treatment he received, primarily at the hands of Mr. Vaughnson. Plaintiff also asserts that he was subject to a hostile work environment while employed by PNC. PNC has moved for summary judgment on all of Plaintiff's claims. This Court will address each claim separately.

*Plaintiff's National Origin Discrimination Claim*

Title VII prohibits employers from discriminating against employees based on, *inter alia*, the employee's national origin. *See* 42 U.S.C. §2002e-2(a).[2] At the summary judgment stage, claims under Title VII are generally analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), unless the plaintiff presents direct evidence of the discrimination. *See Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002). Here, Plaintiff argues that his employment discrimination claims are premised on direct evidence and, thus, must be analyzed under the framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1998), as modified by § 107 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(m). Under the modified *Price Waterhouse* analysis, once a plaintiff presents "direct" evidence that the person's protected status was a motivating factor for the termination, the burden shifts to the defendant to show that it would have fired the plaintiff even if it had not considered the plaintiff's protected class. *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008).

---

[2]   Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin . . . ." 42 U.S.C. §2000e-2(a).

6

   *1. Direct Evidence Analysis*

Plaintiff asserts that PNC subjected him to unlawful discrimination when it allegedly terminated his employment because of his Russian and Ukrainian national origin. In opposition to PNC's motion for summary judgment, Plaintiff primarily argues that he has presented direct evidence to support his national origin discrimination claims. (*See* Pl.'s Opp., ECF 49-1, at p. 8) ("Plaintiff rests substantially on the argument that he was the victim of direct national origin discrimination . . . ."). Plaintiff is mistaken.

When an employee presents direct evidence of discrimination, the case is appropriately analyzed under the test established by the United States Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989), as modified by § 107 of the Civil Rights Act of 1991. Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without any inference or presumption. *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994). In other words, direct evidence of discrimination is evidence that demonstrates that "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002) (citation omitted). "[S]tatements by non-decision makers or by a decision maker unrelated to the decisional process itself are not direct evidence." *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 513 (3d Cir. 2004); *see also Fakete*, 308 F.3d at 338 n.2 (noting that "statements by non-decisionmakers, statements by decisionmakers unrelated to the contested employment decision, and other 'stray remarks'" are not direct evidence). If a trier of fact must infer discrimination from the employer's remarks or actions, then the evidence is not direct evidence of discrimination. *Torre*, 42 F.3d at 829. Only the most blatant remarks, whose intent could be nothing other than to discriminate in reaching an employment decision, are considered sufficient to constitute direct evidence of

7

discrimination. *Taylor v. Procter & Gamble Dover Wipes*, 184 F. Supp. 2d 402, 413 (D. Del. 2002) (citing *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993)).

Under the modified *Price Waterhouse* standard, an employer is liable for discrimination upon proof that a forbidden criterion "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). Where an employer proves that it would have taken the same adverse action against the employee even if it did not consider the impermissible factor, the employee will be precluded from seeking damages or reinstatement but may still be entitled to declaratory relief, certain injunctive relief, and attorney's fees. 42 U.S.C. § 2000e-5(g)(2)(B); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 932 (3d Cir. 1997).

As for the purported direct evidence of discrimination, Plaintiff relies on various statements by coworkers and his branch manager that he contends either expressly or implicitly referenced his Russian/Ukrainian national origin. In particular, Plaintiff points to the following statements:

- "F**ing idiot"; "dumb"; and "go home" (statements made by Mr. McQueen);
- "Russian clown" and "tired of Russians" (statements made by Mr. Vaughnson); and
- "I hate you" (statement made by Ms. Pollard).

As argued by PNC and supported by the undisputed evidence of record, however, none of the individuals making the alleged referenced discriminatory statements was a decisionmaker with respect to PNC's decision to terminate Plaintiff's employment. The undisputed facts show that the decision to terminate Plaintiff's employment was independently made by a member of PNC's Employee Relations—Ms. Schweda—after Mr. DiSandro forwarded an email from Plaintiff about

8

a referral issue. None of the alleged discriminatory statements was made by either Mr. DiSandro or Ms. Schweda, nor were any of the statements made in relation to the decisional process itself. As such, the cited statements relied on do not constitute direct evidence of discrimination and are otherwise insufficient to meet Plaintiff's burden. *See Price Waterhouse*, 490 U.S. at 277 ("Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard."); *Fakete*, 308 F.3d at 337 n.2 (noting that "courts agree" that statements "unrelated to the contested employment decision" and "stray remarks" do not constitute direct evidence).

Plaintiff also points to evidence that his coworkers refused to assist him with and/or interfered with his Russian clients. To constitute direct evidence, however, the cited evidence must prove the existence of a fact in issue without any inference or presumption. *Torre*, 42 F.3d at 829. Plaintiff's evidence that coworkers interfered with his provision of services to Russian clients requires inferences and/or presumptions to prove that Plaintiff was terminated because of his own national origin. As such, this evidence is not direct evidence. Because Plaintiff has not presented direct evidence of discrimination, his national origin discrimination claim fails under the modified *Price Waterhouse* analysis.

### 2. *McDonnell Douglas* Burden-Shifting Analysis

Having failed to present any direct evidence to support his discrimination claim, this Court must determine whether Plaintiff can support his claim under the *McDonnell Douglas* burden-shifting analysis. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). PNC argues that Plaintiff's discrimination claim fails under the *McDonnell Douglas* analysis because Plaintiff has not presented evidence sufficient (1) to create an inference that Plaintiff's termination was based on his national origin or (2) to show that PNC's nondiscriminatory reasons for his termination

9

were a pretext for discrimination. In his opposition brief, Plaintiff makes no attempt to respond to these arguments or to otherwise meet his burden under *McDonnell Douglas*. Instead, Plaintiff merely concludes that "if the burden-shifting tests as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) were to be applied, the circumstances of the Plaintiff's termination give rise to an inference of discrimination." (Pl.'s Opp., ECF 49-1, at p. 8). Such bald statements are insufficient to meet Plaintiff's burden at the summary judgment stage. *See, e.g.*, *Celotex*, 477 U.S. at 322 (holding summary judgment appropriate if the non-moving party fails to rebut the moving party's arguments by making a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Gay v. A.O. Smith Corp.*, 2022 WL 484899, at *2 (M.D. Pa. Feb. 16, 2022) ("Plaintiff's failure to affirmatively respond to [the defendant's] arguments with respect to the first theory constitutes an abandonment of that theory."); *McCowan v. City of Phila.*, 2022 WL 1557779, at *16–17 (E.D. Pa. May 17, 2022) (collecting cases holding claims or arguments abandoned when not raised by plaintiff in opposition to motion for summary judgment). Though this Court finds that Plaintiff's claims have been abandoned, in the interest of judicial economy, this Court will nonetheless address Plaintiff's claim under the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by producing evidence to show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff is qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of discrimination or that similarly situated persons who are not members of a plaintiff's protected class were treated more favorably. *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant

"to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.  If the defendant satisfies this phase, the burden shifts back to the plaintiff to prove that the legitimate reason(s) offered by the defendant are merely a pretext for discrimination.  *Fuentes v. Perskie*, 32 F.3d 759, 804–05 (3d Cir. 1994).

To make a showing of pretext, the plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.  To meet this burden, the plaintiff must "present evidence contradicting the core facts put forth by Defendant, the employer, as the legitimate reasons for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005).  The plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765.  Further, the plaintiff must present evidence that suggests that unlawful discrimination was more likely than not a motivating or determining factor in the defendant's adverse employment actions. *Id.*  That is, the plaintiff must do more than show that the defendant's proffered reasons were wrong or mistaken.  The plaintiff must demonstrate that the defendant acted with discriminatory animus. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001).  The plaintiff can meet this burden by pointing to evidence "that the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's protected class or within another class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998).  Where a plaintiff presents evidence of similarly situated non-class members to sustain his

burden at the pretext stage, he must show with some specificity that the comparators were more favorably treated. *Id.* at 646.

PNC argues that Plaintiff has not met his burden with respect to the *prima facie* requirements because he has failed to present evidence sufficient to give rise to an inference of discrimination. As noted, a plaintiff can meet this element by presenting comparator evidence showing that the employer treated similarly situated persons not in the protected class more favorably, evidence of similar discrimination towards employees in the plaintiff's protected class, or direct evidence of discriminatory animus. *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010) (citing *Swiekiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)). Plaintiff's opposition brief, however, includes no substantive response to PNC's challenge to Plaintiff's *prima facie* case. As such, Plaintiff's opposition is void of any evidence showing that PNC either treated similarly situated employees outside Plaintiff's protected class more favorably or similarly discriminated against other employees within Plaintiff's protected class. On the other hand, PNC has presented evidence showing that it terminated the employment of twelve other employees for the same reason proffered for Plaintiff's termination. This group of twelve former employees consists of individuals of various ethnicities, none of whom are known to be Russian or Ukrainian.[3] In light of this undisputed evidence and the lack of any other comparator evidence, Plaintiff has not met his *prima facie* burden for national origin discrimination.

At best, Plaintiff attempts to rely on the same purported "direct" evidence discussed above to give rise to the requisite inference of discrimination. Plaintiff's cited evidence, however, amounts to mere stray remarks by non-decision makers and/or statements unrelated to the decision to terminate his employment. Such evidence is inadequate to support an inference of

---

[3]   PNC has advised that it does not document the national origins of its employees.

12

discrimination by an employer. *Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 521 (3d Cir. 1997) ("We have generally held that comments by those individuals outside of the decision-making chain are stray remarks, which, standing alone, are inadequate to support an inference of discrimination."); *Carilli v. Mut. of Omaha Ins. Co.*, 67 F. App'x 133, 135 (3d Cir. 2003). Accordingly, Plaintiff has not met his *prima facie* burden.[4]

### *Plaintiff's Hostile Work Environment Claim*

Plaintiff also asserts a claim for a hostile work environment premised on his contention that he suffered harassment at work on account of his national origin. To establish a *prima facie* case of hostile work environment, Plaintiff must show that: (1) he suffered intentional discrimination because of his national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of vicarious liability. *Mandel v. M&G Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). PNC moves for summary judgment on Plaintiff's hostile work environment claim on the basis that Plaintiff has failed to present evidence to establish the requisite severe or pervasive discriminatory treatment.

In determining whether the severe or pervasive element is satisfied, courts look to the totality of the circumstances, including such factors as the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). A plaintiff

---

[4] PNC also moves for summary judgment on the grounds that Plaintiff has failed to show that PNC's articulated legitimate, nondiscriminatory reasons for Plaintiff's termination are a pretext for discrimination. Because this Court has found that Plaintiff has failed to meet his *prima facie* burden of discrimination, it need not address this argument. This Court notes, however, that Plaintiff provides no response to PNC's pretext argument.

must show that national origin played a substantial role in the harassment and that he would have been treated more favorably had he not been in the protected class. *See Andrews*, 895 F.2d at 1485 (3d Cir. 1990).

An employee's subjective belief that he suffered severe or pervasive treatment, without more, is not enough to survive summary judgment. *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 436–37 (3d Cir. 2007) ("[T]o survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."); *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1243 (3d Cir. 1989) ("[P]laintiff may not simply rest upon his bare allegations . . . rather, he must present 'significant probative evidence tending to support the complaint.'"). This determination as to the severe or pervasive element "must concentrate not on individual incidents, but on the overall scenario." *Andrews*, 895 F.2d at 1484. "Isolated incidents" of harassment do not qualify as "pervasive and regular," *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 F. App'x 876, 880 (3d Cir. 2004), nor does the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee,'" *Lawrence v. F.C. Kerbeck & Sons*, 134 F. App'x 570, 572 (3d Cir. 2005); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."). "[O]ffhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." *Abramson*, 260 F.3d at 262; *see also Clayton v. City of Atl. City*, 538 F. App'x 124, 128–29 (3d Cir. 2013) (affirming summary judgment for the defendant and holding that the alleged conduct did not meet the severe or pervasive

requirement because the conduct included "only a few sporadic incidents over the course of several years"); *Lulis v. Barnhart*, 252 F. Supp. 2d 172, 176–77 (E.D. Pa. 2003) (holding that conduct that did not involve forceful contact with the plaintiff and occurred nine times over the course of seventeen months was not severe or pervasive); *Gazdick v. Solis*, 2013 WL 1909576, at *20–21 (M.D. Pa. May 8, 2013) (holding that "occasional public criticisms" of the plaintiff's work by the plaintiff's supervisor did not amount to severe or pervasive conduct); *Tourtellotte v. Lilly & Co.*, 2013 WL 1628606, at *6 (E.D. Pa. Apr. 16, 2013) (holding that offensive comments made during less than a dozen interactions over the course of eighteen months did not constitute pervasive conduct).

At best, and as described above, Plaintiff's evidence establishes isolated incidents that do not rise to the requisite level of severe or pervasive conduct under governing law. As noted, Plaintiff identified a few statements by Mr. Vaughnson that directly or arguably reference Plaintiff's Russian national origin: (1) calling Plaintiff a "Russian clown," (2) stating he was "tired of these Russians," and (3) stating he "hated Russians." Plaintiff also claims another coworker mocked his accent and that various coworkers interfered with his provision of services to Russian clients. While all of these incidents are reprehensible and should not be condoned, they are insufficient to demonstrate the severe or pervasive discrimination required to make out a *prima facie* case of a hostile work environment. *See, e.g.*, *Ocasio*, 92 F. App'x at 880 (affirming the district court's judgment that "[t]here is insufficient evidence that these few alleged incidents created a hostile work environment"); *King v. City of Phila.*, 66 F. App'x 300, 302, 305 (3d Cir. 2003) (finding events "isolated and sporadic" where plaintiff alleges that he was called the "n-word," physically pushed, and threatened with having his work sabotaged); *Money v. Provident Mut. Life Ins. Co.*, 2005 WL 1417095, at *6 (E.D. Pa. June 15, 2005) (gathering cases where

15

derogatory comments were found not to be pervasive or regular).  Because Plaintiff has failed to establish a *prima facie* claim for hostile work environment, PNC's motion for summary judgment on this claim is granted.

### *Plaintiff's Retaliation Claim*

Plaintiff also claims that he was terminated in retaliation for his various complaints about Mr. Vaughnson.  PNC argues that it is entitled to summary judgment on Plaintiff's retaliation claim because:  (1) none of Plaintiff's purported complaints was about conduct that is unlawful under Title VII; (2) Plaintiff cannot establish causation; and (3) PNC has proffered legitimate, nondiscriminatory reasons for Plaintiff's termination and Plaintiff cannot establish pretext.

Like his other discrimination claims, Plaintiff's retaliation claim is subject to the *McDonnell Douglas* burden-shifting analysis.  *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).  As such, Plaintiff must first establish a *prima facie* case of retaliation by showing that:  (1) he engaged in a protected activity; (2) PNC took a materially adverse employment action against him after or contemporaneous with Plaintiff's protected activity; and (3) there is a causal connection between his participation in the protected activity and PNC's adverse action. *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 320 (3d Cir. 2008).  A materially adverse action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  A causal connection between the protected activity and adverse action may be inferred from:  (1) an unusually suggestive temporal proximity between the two; (2) an intervening pattern of antagonism following the protected conduct; or (3) the proffered evidence examined as a whole. *Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

If Plaintiff establishes a *prima facie* case, the burden shifts to PNC to advance a legitimate, non-retaliatory reason for its action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If PNC meets this burden, the burden shifts back to Plaintiff to show pretext by providing evidence by which a factfinder could reasonably (1) disbelieve PNC's proffered legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of PNC's action. *Fuentes*, 32 F.3d at 764. Again, this burden-shifting process requires Plaintiff to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765.

PNC argues that Plaintiff's retaliation claim fails because none of his alleged complaints was connected in any way to unlawful conduct under Title VII. As noted, to establish a *prima facie* retaliation claim under Title VII, Plaintiff must first show that he engaged in protected activity or that he made protected complaints to his employer. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). To fall within Title VII's protection, however, the protected activity must relate to an employment practice that is discriminatory and illegal under Title VII. *Id.* "A general complaint of unfair treatment does not translate into a charge of illegal [] discrimination." *Daniels v. Sch. Dist.*, 982 F. Supp. 2d 462, 485 (E.D. Pa. 2013) (quoting *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)).

Here, Plaintiff points to his various complaints about Mr. Vaughnson and other coworker as the protected activity underlying his retaliation claim. As conceded by Plaintiff, however, none of these complaints included any reports of unfair treatment based on his national origin or any other discriminatory conduct. At his deposition, Plaintiff testified as follows:

> Q. So, is it fair to say that you never complained to anyone at PNC that Vaughn Vaughnson's treatment of you, or anyone's treatment of you, was because of your national origin being Russian and Ukrainian?
>
> A. I never specifically complained that I was discriminated because I'm Russian, never in those terms that you just said.
>
> Q. Or because you're Ukrainian, correct?
>
> A. Yes.

As such, by his own testimony, none of Plaintiff's complaints to Defendant was about discriminatory conduct made unlawful by Title VII. In addition, none of the email complaints produced in discovery include complaints about any discriminatory conduct. Because Plaintiff's complaints regarding Mr. Vaughnson and his other coworkers were complaints unrelated to national origin discrimination or other protected activity under Title VII, Plaintiff's retaliation claim fails as a matter of law. *See Curay-Cramer*, 450 F.3d at 135; *Daniels*, 982 F. Supp. 2d at 484.[5]

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet his summary judgment burden with respect to any of his claims. Accordingly, PNC's motion for summary judgment is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[5] PNC argues, in the alternative, that even if Plaintiff could make a *prima facie* case of retaliation, Plaintiff has failed to proffer evidence sufficient to meet his burden as to either causation or pretext. Because this Court has found that Plaintiff has failed to meet his *prima facie* burden of retaliation, it need not address these arguments. This Court notes, however, that Plaintiff provides no response to PNC's causation or pretext argument.